did you drive down this morning? Yeah we did. Train, I was originally planning to drive but my sister lives here and was telling me traffic's going to be bad so. Oh they're working. I just picked it up at the airport. 30 train at the airport gets knocked away. Oh yeah. It's pretty nice. Yeah it only makes a few stops. Yeah. Oh, 8 o'clock. Yeah. Yeah. Oh nice. Yeah because I just heard that. I don't know if you get a lot of traffic. No we don't. We don't. It looks like it's going to be rain all the time. Yeah. Hopefully it's a beautiful day. Yeah.   Hopefully it's a beautiful day. Hopefully it's a beautiful day. Hopefully it's a beautiful day. Hopefully it's a beautiful day. Hopefully it's a beautiful day. And also every one of you. God save every one of you. It's wonderful to see you all. And with that, isn't this place big? We're going to go to our first case which is Skyrise Construction versus Annex Construction. Good morning. Good morning. In 30 years of practice, this is the first time I've had to do oral arguments. Good morning. Should I just start? I haven't occurred before you before. Yeah, we'll help you. Okay. Good morning. Attorney Gary Thompson from Milwaukee. I represent the appellant Skyrise Construction Group, LLC. Skyrise is in the subcontractor for providing framing services in the commercial construction industry. Skyrise committed to provide 16,800 man hours of labor for a project in Oshkosh, Wisconsin. And after 14 weeks, an accepted bid, site meetings, was summarily dumped by the general contractor, the defendant appellee Annex. This is an appeal from the magistrate judge decision in the Eastern District of Wisconsin, dismissing Skyrise's complaint on cross motions for summary judgment. Mr. Thompson, maybe you could speak a little bit to the size of the party's negotiation. It looks like it originally started about $950,000 and then it went up to around $2.3 million and or $3.something million. How did that morph? Yes. Originally, Skyrise's scope of its bid was to provide the framing and window insulation work at the student housing project in Oshkosh. The accepted bid was $950,000. We fast forward the bid signed by Annex. Skyrise is committed to do the work. They give up other work. And at a site meeting on October 9, 2017, Skyrise is, which was Skyrise requested to attend a site meeting, they discover that the project isn't anywhere near ready for them to begin framing. And at that point, Annex's principal, Mr. Tomaszewski, requested Skyrise to provide some solutions. And some of the solutions that Mr. Garcia for Skyrise came up with is he thought, well, they could penalize the construction. Maybe if they took on a larger scope of work, there would be more efficiencies in getting the production done to get Annex back on schedule. And so it was from that October 9, 2017 meeting that Annex asked Skyrise to come up with these solutions and that resulted in a request by Annex for Skyrise to provide an amendment to its bid for this expanded scope of work. And that was submitted to Annex here in Illinois in a meeting that occurred here in Illinois on October 24, 2017. The numbers were refined over the next few weeks and on October 31, 2017, Skyrise provided that revised bid for roughly $2.2 million. Now on that expanded scope of work, are we still talking about framing or are we talking about a change in the nature of the work? No, it included the original $950,000 accepted bid work for the framing and window installation, but also other scope of work. Now Skyrise asserts that it forewent several other opportunities to obtain other work during this time period and that it would have been awarded this other work. Is there any evidence in the record that supports the claim? In other words, for instance, are there affidavits from the name companies, for example, saying they would have hired Skyrise if they had received a bid? Or any evidence regarding how often bids were accepted or rejected? Skyrise is in a sweet spot. Back in 2017 and continuing through current times, we're in a full employment economy. There's a shortage of construction labor for this type of work. Skyrise was bidding on three other projects for housing projects in Wisconsin at the time, and their track record was they typically would be low bidder and would be able to accept work simply by adjusting their numbers. See, but what we need to know, we really do need to know, if there's support for the claim itself in the record. Granted, and directly to that point, Mr. Garcia's affidavit is the support, the evidentiary support. And in that he indicates that he gave up this other work. Would it be a question of fact and dispute whether he would have gotten it? Yes, but that's a trial issue. And those witnesses would be named on Skyrise's witness list and would testify at trial. Now, on page 30 of the response brief, Annex has quoted the case of C.G. Schmidt v. Permastilisa, and that's a Seventh Circuit 2016 case, for the proposition that reliance on a conditional promise is not reasonable. Can you distinguish that case from the circumstances here? That case also involved protracted negotiations that eventually fell apart. Here, Your Honor, I believe we have facts that take this case away from C.G. Schmidt. And here we have an accepted bid that's signed by Annex. We have arguably part performance or the commencement of performance by Skyrise attending a requested site planning meeting on October 9, 2017. That's what takes this case out of C.G. Schmidt's facts. You see, Skyrise asserts that Annex orally agreed to the modification that Skyrise wrote into the contract that it signed and returned on October 11. But the contract, the contract itself, states that it supersedes all prior and written representations. So it appears that Annex did not sign or accept any document that contained those modifications. And if you could help us with that, it would be great. So we step back to the bid, Skyrise's bid of July 19th. It was verbally agreed to by Annex. Fast forward from July 19th to September of 2017. Skyrise requests Annex formally sign the bid. It was verbally done back in July. That was done by Annex. It was signed September 22, 2017. And Mr. Tomaszewski for Annex put a little note on it. It just said Exhibit A. And then it was delivered to Skyrise. Skyrise had a larger contract form that had been previously provided. And it was at this October 9th meeting, the site meeting in Oshkosh, that Mr. Garcia alleges that he, in his sworn affidavit, that he had a discussion with Mr. Tomaszewski about some contract terms that they had previously agreed to that weren't in this revised form contract. And one of the most important ones was the fact that the draft contract form said that Skyrise would only be paid on a monthly basis. And it was important that Skyrise be paid biweekly. They're providing labor, and if they don't have the money to pay their laborers on a regular basis, they won't have employees showing up. So that and the other changes Mr. Garcia attests that Annex's Tomaszewski agreed to. And how do you reconcile that with the mirror image rule? Well, we have apparent authority or actual authority as a principal and agent. If Mr. Tomaszewski authorized Mr. Garcia to make the changes and sign them, those would be questions of facts. But that's the theory that Skyrise advances and is supported by Mr. Garcia's affidavit, that he was authorized to make those changes and that that would be binding on Annex. There's a few points I'd like to call to attention in the court. There was an argument, there was some waiver by Skyrise in some of its pleadings and arguments before the district court. I cited in the reply brief that this court is not limited by the theories advanced by the parties, but there are factual supports for all the arguments and evidentiary support. I'd also note that all the materials in the record should be considered as permitted by federal rule of civil procedure 56, paren c, paren 3. Interestingly, I call attention in the reply brief to what's called the summary judgment problem. And this case presents some interesting considerations for the Seventh Circuit regarding the rule that's established by the Wisconsin Supreme Court in Anderson v. Liberty Lobby, that's at page 5 in the reply. There, the Supreme Court has stated that a judge can decide whether summary judgment should be granted by determining whether a reasonable jury could decide for the non-moving party. And Skyrise argues that maybe, how to put this, the Supreme Court has established that as permissible, but didn't give any guidelines. And this case presents an opportunity for this court to, in the Seventh Circuit, to set policy on how that's applied. And Skyrise's argument is that it requires a consensus of judges to reach this conclusion. And there's a great law review article by Suja Thomas from the University of Illinois College of Law in the Fordham Law Review, which is cited in the brief, that really develops this argument. So bottom line, your view is that Annex accepted the amended version of the agreement on October 11, 2017. Yes, as one of the claims, yes. Because Annex, in your view, orally agreed to the amendments? Annex authorized, the argument is that Annex authorized Mr. Garcia to make the changes on its behalf on the contract form. And by Mr. Garcia signing the contract document with the pendant changes, that constituted acceptance. Remember, the bid was signed by Annex's Mr. Tomaszewski a few weeks before and delivered with this notation on an Exhibit A. I guess it's a question of fact whether it was intended that Exhibit A be the contract form or it's included as the, you know, an offer, the risk of the offeror is that it's accepted by formal acceptance. So I want to bring to the Court's attention also Claim 4. It raises a very interesting issue. This is the claim under the Wisconsin Deceptive Trade Practices Act. That law, in essence, says any firm or company with the intent to sell or increase the consumption of, here, employment or anything offered by the company with intent to, I'm paraphrasing here, with intent to induce the public to enter into any contract, that would be sky-rise. Commercial entities have been recognized to be, quote, members of the public. If they publish a statement or make a representation under Wisconsin law, it can be an oral statement relating to those elements, these broad elements, hiring, employment, are included in there, and which statements are untrue, deceptive, or misleading and causes the member of the public, here, sky-rise, to suffer damages, that that is a, invokes a liability or a violation of the law. And this is... I'm going to stop you because, remember, you want three minutes rebuttal. Oh, yes. I'm just going to wrap this up then. Sure. And the only, this is a unique issue that it doesn't appear that this Wisconsin Deceptive Trade Practices Act has been applied in the general contract or subcontractor factual scenario. And I'll only conclude by saying, for the court, is that the sales promotion that Annex was attempting to solicit sky-rise to provide the construction labor, and getting that commitment from sky-rise to back off, and block off, rather, their schedule was the commitment and the misrepresentation. But it's a very interesting issue. And I believe that that specific issue is a question of first impression in Wisconsin and here as well. Thank you. Thank you. Good morning, Mr. Jacobs. Good morning, Your Honors. May it please the court, my name is Greg Jacobs, and I represent Annex, the appellee in this proceeding. I am here to respectfully request that you affirm the order for Magistrate Judge Joseph that granted Annex's motion for summary judgment in full and denied sky-rise's motion for summary judgment in full. And I have three points that I would like to highlight from our briefing before the court. But before that, just a few clarifications I wanted to make based off of the argument by sky-rise. First, it is Annex's view, and it's undisputed on the record, that the October 31st bid was not an amendment of any previous bid. If you compare the two bids, they use the same form. The October 31st bid does not reference the previous July 2017 bid at all. In fact, it bids for the same work that the original bid was submitted for different pricing. It was a totally different bid. So your view is that it was a vastly expanded proposal at a greatly increased price. Is that what you're saying? Correct, Your Honor. As further outlined— Nothing was added. I'm sorry? I mean, a lot of new work was not part of all that, or was it? Correct. In your view, yeah. In our view, the revised bid, sky-rise was proposing to do an expanded amount of work. So the original framing work that was originally discussed in some other work as well, which is why the price was increased. I believe the bid was actually for $3.8 million, increased from the $950,000 original bid. And so Annex's view, and we believe that the undisputed factual record demonstrates this, is that the parties were in an ongoing negotiation and had not reached any agreement on any material terms and at that point was asking Sky-Rise to provide an expanded scope of the bid because the schedule and the demands of the project had evolved over time, which is often the case in the construction industry. And so it made sense at that time with the changing needs of the project for Sky-Rise to bid the expanded scope of work. In no way was it an amendment of any previous bid or contract or any agreement because the parties had not entered into any formal agreement at that time. Could Annex have enforced the 7-19-2017 bid against Sky-Rise? Specifically, once Annex accepted the bid, would that document bind Sky-Rise? Annex's position is under these circumstances, no. That was akin to an agreement in principle, but the parties had not formalized the agreement, had not negotiated out the material terms. So that happens in lots of contexts of the world where you've agreed in principle, but if things break down subsequently, both parties are free to walk away. That is Annex's position. Now there is the line of cases, the Drennan rule I know is discussed in the briefs, where under certain circumstances a general contractor may enforce a bid against a subcontractor, but that's under circumstances where the general contractor is relying on the subcontractor's bid to submit an overall bid for the project. Here Annex was both the project owner or its related entity was the owner of the project and Annex was acting as the general contractor. So that would not apply here because Annex was not bidding for the work to any type of owner. So Annex's belief in the undisputed factual record here demonstrates that the parties were simply negotiating throughout the course of the three months and never reached an agreement before the project needs changed and then obviously in late October, you know, Skyrise rebid the work for the expanded work and Annex found an alternative means for getting that work done. You know, Skyrise asserts in its brief that the Wisconsin Supreme Court has permitted commercial entities to recover under Section 100.18 and that was citing Gordon versus American Sign Amendment. I didn't see a response to that assertion in Annex's brief. Would you like to respond to that argument now? Are commercial entities protected by that Wisconsin statute? I think that's an open question under Wisconsin law, but, you know, we in Annex's position, you know, obviously the district court addressed that issue and called into question whether 100.18 would even apply to these circumstances given the language of the statute that it says that it only applies to contracts relating to the purchase, sale, hire, or lease of any real estate, merchandise, securities, employment, or service. And so Annex's position is that a general contractor, subcontractor agreement to work on a construction project does not fall under any of those categories and therefore the statute would not apply under the circumstances even if Skyrise could establish that Annex committed any type of deceptive trade practice, which, you know, for the number of reasons we've said in our brief, we do not believe the factual record demonstrates here. The other point that I wanted to bring up in response to Skyrise's argument regarding the October 10th handwritten modifications to the proposed contract documents, it is important to note that with regard to the argument that Annex consented to these changes, the affidavit of Mr. Garcia upon which that's the only evidence that they're relying on to assert that Annex relied on these changes, Mr. Garcia only says that the amendment to the, or the revision to the payment provision in the contract was discussed and agreed to at that meeting. If you review the handwritten edits, Mr. Garcia also made edits to, I believe it's Article 2.1 of that contract regarding the scope of work, and in his affidavit, Mr. Garcia states that there was simply a mistake in that contract and that, you know, stating that they had to supply certain materials that, in actuality, Skyrise was not required to provide, and so he was simply correcting a mistake. Now, nowhere in the record has it been established that Annex accepted that So even if you were to accept that argument as true, the factual record does not support that all of the changes, the handwritten changes in the contract, were agreed to by Annex. And I think that gives me a good segue into that whole issue, and I think it's important, you know, to step back and review kind of the procedure of this case, and that is that none of the arguments regarding the October 10th handwritten changes or the October 9th meeting where Skyrise now asserts that it's, by attending that meeting, it is partially performed and formed a contract or implied in fact contract, none of those issues were adequately briefed before the district court. None of those issues were even addressed by the district court. In fact— So you believe all of that has been waived? Yeah, we believe that Skyrise has forfeited its right to now assert that for the first time on appeal. And if I could read, you know, exactly what the district court said was that on page 9 of her order, Skyrise alternatively argues that if the contract was not formed on September 22nd, 2017, then the changes Skyrise made to the agreement were not material and the contract was formed on October 10. Skyrise does not develop this alternative argument. For this reason, I will not consider the argument further. And as the basis for that, you know, the judge is relying on precedent from this court, Judge V. Quinn, which discusses in great length forfeiture of arguments and the policy behind this, which is, you know, that the district court is the initial arbiter of the factual record, and if you want to make those arguments, you need to adequately present them to the court for the court's consideration and for the other party to adequately, you know, judge the merits and provide any response and, more importantly, develop the factual record. In the Judge V. Quinn case, the relevant quote says, you know, this is a Seventh Circuit case, says that we have made it clear in the past that it is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel, and we have warned that pre-functory and undeveloped arguments and arguments that are unsupported by pertinent authority are waived. We believe that that's exactly what has happened here. The district court did not even address some of the arguments that Skyrise has now risen on appeal. They didn't even feel the need to address the part performance argument, and they did not adequately or did not even address the argument on the merits that the October 10th handwritten changes were somehow consented to by Annex, and that was an agreement between the parties. And I think it's important to point out that not only to allow Skyrise to now argue this for the first time on appeal, it also prejudices Annex by not allowing Annex to develop the factual record at the district court. Now, if Skyrise wanted to argue that they had reached an agreement through these handwritten changes and, you know, delivering of their material changes to a proposed contract document, that that formed the agreement, then they should have adequately briefed that in the district court so Annex, on reply, could have evaluated the merits, both on a legal sense and the factual support for that, provided we also could have provided additional record or facts into the record to address or to refute that position. So as a procedural matter, Annex respectfully requests that those arguments not even be considered because it would prejudice Annex, who wasn't permitted to fully develop the factual record on those issues, and the district court, frankly, who did not believe that it had been adequately briefed in order for the district court to address the argument on the merits. Mr. Jacobs, I'd like to take you to the 118 claim. Historically, that's been known as a consumer-type statute. There's this decision from 2007, K&S, Tool and Die, which talks about whether or not an individual or an entity is a member of the public depends on whether there's a particular relationship between the plaintiff and the defendant. Then K&S goes on and says whether or not someone is a member of the public is an issue of fact. If there is not a particular relationship, within this type of litigation, one often sees an argument, you can't get summary judgment on 118 claim because it's an issue of fact as to whether or not an entity is a member of the public. What would Annex's response to that be? I'm not questioning the rubric applied by the cases with respect to that issue. I think Annex's position is, as we previously stated, there are other elements to that claim that have not been established by the—that have not been proven by Skyrise. They have to prove every element in order to save the claim or for the claim to proceed to trial. Mainly that, similar to the other issues at play here, there is no fraudulent conduct or deceptive business practice evidence anywhere in the record. As the district court aptly noted, this was nothing more than a standard general contractor, subcontractor negotiation. Skyrise has been unable to provide any evidence whatsoever of any type of unfair business practices, any type of misrepresentations by Annex or false promises. This is not that type of case. Respectfully, Annex would say that we never get to the issue that you were raising because there was no conduct here that warrants—that supports the 118 claim. And then finally, it looks like I'm running low on time. I would like to just quickly run through Skyrise's new arguments that they've brought on appeal. I mean, obviously, Annex's position is that from a procedural standpoint, they are not ripe for review and that should be rejected or denied without addressing the merits. Even if we were to address the merits of those arguments on the limited factual record here with regard to those issues, Skyrise still can't prove its claim. With respect to the October 10th contract, Skyrise's theory is actually twofold. It's that first that the handwritten edits on the contract document were not material. To that, Annex has provided a well-settled Wisconsin authority that the two main edits to that, two provisions that were revised by Skyrise were the payment provision edit and the scope of work provision. We believe it was well-settled that both payment terms and scope of work in a construction context are material terms to a contract, so we do not believe that that argument is supported by the law. And the second argument with respect to the handwritten edits is, as we've previously discussed, they've asserted that we agreed to those edits at the October 9th meeting, and therefore that because Mr. Tomaszewski orally agreed to those modifications, that October 10th contract is a formal contract just by returning it to Annex. And as I said previously, there's no factual support for the assertion that Mr. Tomaszewski agreed to the scope of work edits. I mean, Mr. Garcia has just unilaterally asserted that the materials that he deleted from that provision were a mistake and that it shouldn't have been there. Mr. Tomaszewski certainly did not agree to that. And, you know, as I said before, we could have fleshed out that issue more in the district court if it had been raised properly. But I think more to the point is if you review the evidence in the record of the parties' conduct subsequent to October 10th, it shows that both parties understood that they were still in negotiations. There was emails back and forth between the parties about this expanded work that Annex now needs on the project. And obviously, and then we look at the October 31st, the new bid for the expanded work, in no way at any point in time does Skyrise ever reference an agreement regarding the rough framing. Carpentry, it doesn't say that this is an amendment to the already agreed upon terms. The record is completely devoid of any of those types of facts. So it's our belief that the undisputed record doesn't support Skyrise's argument, even if you were to accept it on the merits. And then finally, with respect to the October 9th meeting, Annex or Skyrise argues that somehow by attending that meeting that they had partially performed and there was an implied contract agreement, I would just like to point out that, again, they're relying on Mr. Garcia's affidavit for that. And in the affidavit, Mr. Garcia admits that Annex requested Skyrise to attend the meeting. At various times throughout its briefing, Skyrise has asserted that Annex required Skyrise to attend that meeting, and that is just factually unsupported by the record. Even Mr. Garcia admits that it was only a request. And so we do not believe under the law cited by Skyrise that the factual record supports any type of implied in fact contract by attending that meeting. So it looks like I'm running low on time. The last point I would just like to point out from an equitable standpoint is that Annex got the proposed contract documents to Skyrise in the first week of August, and Skyrise sat on the proposed contract documents for over two months. But Skyrise wanted some sort of certainty that it had the work. It could have promptly reviewed and agreed to the terms. And for those reasons, we respectfully ask that you affirm the lower court's decision. Thank you very much. Give Mr. Thompson his full three minutes. Please. Just to respond, I reply to a couple points. On the issue of waiver, I addressed that. Skyrise has addressed that at page 15 of the reply. Importantly, there's a distinction because this is a de novo review. Supreme Court has distinguished between bringing a new claim before the court, which is not allowed, and bringing a new argument, which often is. And there's citation to cases where that has been allowed. I request the court consider those arguments. There was a question regarding the Drennan rule. Again, the Drennan rule is that a bid given by a subcontractor to a general contractor who then incorporates that bid into their proposal and gets a contract, the general contractor can enforce that bid against the sub, even if the sub is unsigned. It's a promissory estoppel type theory. Skyrise argues, hey, they relied on the general contractor here, Annex, to sign the bid. And then Skyrise committed to provide 16,800 hours of work over 14 to 16 weeks starting in October 2017. And they were dropped cold when, and it's factually, there's an email from Mr. Tomaszewski dated 11-2-2017. And in that email, he says, we are going to go ahead and pass on this, guys, further explaining that Annex found another contractor to do work, at their timeline and at a lower price. The argument's been raised in the brief that you can't bid-chisel, you can't go back and negotiate once you have an agreement. That's essentially what happened here. They found a better price and they left, Annex left Skyrise having committed to do their job, the project, which Annex could have enforced against Skyrise under the Drennan rule. And they just left them cold and Skyrise suffered damages. Request fully respect that the court reverse the district court's decision and reinstate the claims. Thank you. Thank you. Thank you to both Mr. Thompson and Mr. Jacobs. And the case will be taken under advisement.